STATE OF NEBRASKA, APPELLEE, v. MICHAEL McNITT, APPELLANT.
346 N.W.2d 259

Filed March 23, 1984. No. 83-747.

Michael McNitt, pro se.

Paul L. Douglas, Attorney General, and Michaela M. White, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Michael McNitt, appeals from an order entered by the district court for Hall County, Nebraska, denying McNitt post conviction relief. McNitt filed a petition seeking a writ of habeas corpus, but, as noted by the trial court, the application for a writ of habeas corpus was misplaced. A writ of habeas corpus is not available to persons lawfully convicted if the court imposing the sentence had jurisdiction of the offense and of the person charged with the crime and if the sentence was within the power of the court. See, *Pruitt v. Parratt*, 197 Neb. 854, 251 N.W.2d 179 (1977); *Case v. State*, 177 Neb. 404, 129 N.W.2d 107 (1964). After the trial court specifically found that the application was not properly an application for a writ of habeas corpus, it considered the application filed by McNitt as an application for post conviction relief filed pursuant to the provisions of Neb. Rev. Stat. §§ 29-3001 et seq.

(Reissue 1979). We have now reviewed the record and the court's order denying relief and conclude that the trial court's order was in all respects correct.

On May 28, 1980, an information was filed in the district court for Hall County, Nebraska, charging McNitt with felony murder in violation of Neb. Rev. Stat. § 28-303(2) (Reissue 1979). The charge grew out of the killing of Brian Crittenden on February 1, 1980, during the perpetration of a robbery. On May 28, 1980, McNitt pled not guilty to the charges, and shortly thereafter filed several pretrial motions which were never ruled upon by the trial court. On December 3, 1980, the State filed an amended information charging McNitt with criminal conspiracy to commit murder in violation of Neb. Rev. Stat. § 28-202 (Reissue 1979). The original charge of felony murder was a Class I or IA felony, which could have subjected McNitt to either death by electrocution or life imprisonment. Neb. Rev. Stat. §§ 28-105(1), 28-303(2) (Reissue 1979). The amended complaint was a Class II felony, which, at most, would have subjected McNitt to imprisonment for not more than 50 years. §§ 28-105(1), 28-202.

The record includes a written copy of a plea agreement which contains a promise by the State that no other or different charges would be filed against McNitt other than conspiracy to commit first degree murder, conditioned upon McNitt remaining incarcerated but segregated from other codefendants until after the codefendants were tried, and further conditioned upon McNitt agreeing to cooperate with law enforcement officials by testifying in the trials of the defendants. McNitt's testimony at the trials of the codefendants was the basis upon which the State agreed to reduce the charge against McNitt, and therefore the State could not permit McNitt to plead to the reduced charge until after he had testified at the other trials. During all of the times relevant to the plea, McNitt was represented by counsel.

The record further discloses that McNitt was aware of all of these matters, including his obligation to testify, and freely and voluntarily participated in the agreement. Specifically, a portion of the plea agreement signed by McNitt recited in part as follows: "I have been informed of my constitutional rights by my attorneys, and I understand these rights and understand that by this agreement and upon entering of my plea of guilty to 'Conspiracy to Commit First Degree Murder' of Brian Crittenden, I will waive these rights." Additionally, the order of the court entered on December 3, 1980, at which time McNitt pled guilty to the amended charge, recites the fact that McNitt's rights were explained to him; that exhibit 1, the plea agreement, was offered and received in evidence; and that the speedy trial statute was explained in detail to McNitt. The order further recites that McNitt waived his speedy trial rights and entered his plea of guilty to the amended complaint. The record clearly establishes that at the time that McNitt entered his plea of guilty to the amended complaint, he did so freely, knowingly, and voluntarily. No claim is made by McNitt that any of those facts are untrue. McNitt was ultimately sentenced to imprisonment for a term of not less than 7 nor more than 30 years, with credit for the time served since April 8, 1980. McNitt then filed a notice of appeal to this court. The sentence was affirmed by this court without opinion on July 29, 1981. Thereafter, on August 31, 1983, McNitt, acting pro se, filed the application involved in this appeal in the district court for Hall County, Nebraska.

McNitt maintains that the trial court committed three errors in denying his request for post conviction relief. He contends (1) he was denied his right to a speedy trial; (2) he was denied his right to effective assistance of counsel with regard to the raising of his right to a speedy trial; and (3) the trial judge who sentenced him was prejudiced, because the trial judge had acted as county judge during the

preliminary hearing in the county court.

We find that there is no merit with regard to the first claim that McNitt was denied his right to a speedy trial. Whether we consider McNitt's claim under the Nebraska statute, Neb. Rev. Stat. § 29-1207 (Reissue 1979), which requires that a person be brought to trial within 6 months from the date an indictment is returned *or an information is filed*, or whether we consider McNitt's claim to a speedy trial under the Constitution of the United States or the State of Nebraska, see U.S. Const. amend. VI and Neb. Const. art. I, § 13, we reach the same conclusion. Neb. Rev. Stat. § 29-1209 (Reissue 1979) specifically provides: "Failure of the defendant to move for discharge prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to speedy trial." See, also, *State v. Hert*, 192 Neb. 751, 224 N.W.2d 188 (1974). The provisions of § 29-1209 are fully consistent with the rule long recognized in this jurisdiction that by entering a plea of guilty, knowingly, voluntarily, and intelligently, the defendant waives every defense of the charge, whether the defense is procedural, statutory, or constitutional. See *State v. Falcone*, 212 Neb. 720, 325 N.W.2d 160 (1982). By knowingly, intelligently, and voluntarily entering his plea to the amended charge, McNitt waived his right to a speedy trial. This is so as long as the defendant was properly advised of his rights by either counsel or the court, see *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982), and applies even though the plea was entered after the 6-month period had expired. It is clear in this case that McNitt was properly advised of his rights by the court before he waived his right to a speedy trial. We therefore have no difficulty in finding that by voluntarily entering his plea of guilty to the amended charge, McNitt waived any rights to a speedy trial under the Nebraska statute.

Additionally, and perhaps of even greater impor-

tance, it would appear from the record that the 6-month period had not expired. The time in which a defendant must be brought to trial in accordance with § 29-1207 is not absolute. There are certain events which toll the 6-month period, including the events described in subsection (4)(a), which excludes from the 6-month period "[t]he period of delay resulting from other proceedings concerning the defendant, *including but not limited to* . . . the time consumed in the trial of other charges against the defendant." (Emphasis supplied.) While the delay here was not by reason of the trial of other charges against the defendant, its cause is of sufficient similarity to the items enumerated in subsection (4)(a) and clearly falls within that subsection.

The record discloses that on June 11, 1980, and well within the 6-month period, the plea agreement was executed. By the very terms of the agreement McNitt's time to plead was delayed and the provisions of § 29-1207(4)(a) tolled.

Turning briefly, then, to the constitutional provisions, we likewise have no difficulty in finding that McNitt was not denied a speedy trial under either federal or state constitutional provisions. " 'The constitutional guarantee of a "speedy trial" is intended to prevent the oppression of a citizen by delaying criminal prosecution for an indefinite time and to prevent delays in administration of justice by requiring judicial tribunals to proceed with reasonable dispatch in trial of criminal prosecutions. * * * A "speedy trial", generally, is one conducted according to prevailing rules and proceedings of law, free from arbitrary, vexatious and oppressive delays. . . . The right of a speedy trial is relative and depends upon circumstances and is not denied where delay is satisfactorily explained by government and defendant was brought to trial as soon as was reasonably possible.' " *Svehla v. State*, 168 Neb. 553, 568-69, 96 N.W.2d 649, 659 (1959). " 'The right of a speedy trial is necessarily relative. It is consistent with delays

and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' [Citation omitted.] The delay must not be purposeful or oppressive. The essential ingredient is orderly expedition and not mere speed." *State v. Ford*, 186 Neb. 109, 110, 180 N.W.2d 922, 923 (1970). "The standard relating to federal and Nebraska constitutional guarantees is reasonableness." *State v. Pilgrim*, 182 Neb. 594, 597, 156 N.W.2d 171, 173 (1968).

The record in this case makes it clear that McNitt was in no manner prejudiced by the delay, and in fact was greatly benefited by it. Furthermore, it is clear that by reason of McNitt's obligation to testify the delay, in effect, was at the request of McNitt. Had the delay not occurred so that McNitt was permitted to enter a plea to the amended charge after the trial of the coconspirators, McNitt may very well himself have been tried for felony murder and subjected to punishment of at least life imprisonment. By being permitted to wait McNitt was permitted to enter a plea of guilty to an amended charge which resulted in his being incarcerated for a period of not less than 7 nor more than 30 years, which is substantially less than the life sentence facing him under the murder felony conviction. In his application McNitt makes no allegations of fact which would disclose any prejudice to him by reason of the delay, and we are unable to find any in the record. We therefore conclude that McNitt was not denied any rights under either the U.S. Constitution or the Nebraska Constitution by reason of his trial not taking place until December 3, 1980.

McNitt's second claim of ineffective assistance of counsel likewise must fall for the very reasons his first claim is without merit. The standard for determining whether counsel for a defendant in a criminal prosecution has provided adequate representation requires that trial counsel perform at least as well as a lawyer with ordinary training and skill in

the criminal law in his area and that he conscientiously protect the interests of his client. See *State v. Clark, ante* p. 49, 342 N.W.2d 366 (1983). The person alleging ineffective assistance of counsel has the burden of proof of establishing the incompetency of counsel and, further, demonstrating how the inadequacy was prejudicial. *State v. Herren,* 212 Neb. 706, 325 N.W.2d 151 (1982); *State v. Crouch,* 215 Neb. 205, 337 N.W.2d 766 (1983).

As we have already noted, the plea agreement which permitted McNitt to plead to the amended charge was executed on June 11, 1980, and it tolled the provisions of § 29-1207. McNitt was not entitled to be discharged on the grounds that he was not tried within 6 months of the filing of the information and that his constitutional rights had been denied. Because he was not entitled to discharge, his counsel could not be guilty of failing to advise him of an alleged right to be discharged. Counsel in this case can hardly be considered ineffective for negotiating an agreement that resulted in a substantially reduced charge. McNitt's claim is ludicrous.

McNitt's third claim concerning possible prejudice by the trial judge is likewise without merit. The record discloses that at the time McNitt was originally arraigned, Judge DeBacker, the trial judge in the district court, was then one of the county judges for Hall County, Nebraska, and served as the magistrate at the preliminary hearing which was held in connection with the charge of felony murder. Thereafter, Judge DeBacker was appointed to the district court and accepted the plea from McNitt. The record discloses, however, that all of the requirements of accepting a plea were complied with and that the plea by McNitt was made knowingly, voluntarily, and freely. McNitt has not alleged any prejudice, nor has he made any showing of any prejudice by the trial judge in this case, except for the fact that he took a guilty plea after having presided at the preliminary hearing. The

mere fact that a judge has acted previously in a cause does not establish prejudice. See, *Waupoose v. State*, 46 Wis. 2d 257, 174 N.W.2d 503 (1970); *State ex rel. French v. Hendricks Sup. Ct.*, 252 Ind. 213, 247 N.E.2d 519 (1969). We therefore believe that McNitt's application did not allege facts entitling him to a hearing or any relief under the Post Conviction Act and that the trial court's action in denying such application was correct. The judgment is affirmed.

AFFIRMED.