1999 SD 24

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Michael HOEFT, Defendant
and Appellant.**

No. 20388.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1999.

Decided Feb. 24, 1999.

**324**

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, for plaintiff and appellee.

James A. Eirinberg, Sioux Falls, for defendant and appellant.

SABERS, Justice

[¶ 1.] Michael Hoeft appeals his convictions claiming that: 1) the trial judge should have removed himself sua sponte from the case when he was required to rule on the legal validity of a search warrant which he issued; 2) SDCL 22–14A–13 is unconstitutionally vague; 3) his conviction for violation of SDCL 22–14A–13 should be vacated because he pled guilty to a constitutionally defective indictment; and 4) his pleas are void because he did not make them knowingly, intelligently, and voluntarily. We affirm.

## FACTS

[¶ 2.] A confidential informant told Lincoln County drug task force agent Guy Spielman that he could purchase drugs from Michael Hoeft. On July 9, 1995, Spielman set up a controlled drug buy between the confidential informant and Hoeft at Hoeft's home. The confidential informant paid Hoeft $25 for a quarter gram of methamphetamine. Hoeft said that he would have more methamphetamine if the confidential informant returned later.

[¶ 3.] While in the home, the confidential informant observed a homemade weapon called a "zip gun" and a large number of matchbooks and cut-off matchheads scattered on the floor. When questioned about the matches, Hoeft indicated he was working on something to help a friend who had been wronged and talked about a chemical that was highly explosive. Their conversation was recorded.

[¶ 4.] Spielman performed a presumptive field test on the substance purchased from Hoeft.[1] The test indicated it was

---

1. Spielman explained a presumptive field test at the motion hearing:
    A: Presumptive field test gives us a general indication of whether it's methamphetamine or not.

    Q: How is that test conducted
    A: You take a little sample of the Meth, you put it in—it [has] a plastic case it comes in—you put your sample in there. There's a vial in there you break, you

methamphetamine.[2] He applied for and was granted a search warrant for Hoeft's home. A warrant for Hoeft's arrest was also issued.[3] The search was conducted on July 9. Law enforcement seized 57 items from Hoeft's home, including a bag containing 59.5 grams of a white powdery substance, a plate with brown residue, a digital scale, a bag containing shark teeth, a .32 caliber revolver, the "zip gun," various chemicals, a book entitled "the Anarchist Cookbook" and a book on the manufacturing of methamphetamine. The basement contained an apparent methamphetamine laboratory. Later testing by the state crime laboratory determined that only the plate with brown residue contained methamphetamine; the other items were a noncontrolled substance, pseudoephedrine.

[¶ 5.] Hoeft was indicted on eight counts:

Count 1: Possession of a Controlled Substance with Intent to Distribute (SDCL 22–42–2)

Count 2: Possession of a Controlled Substance (SDCL 22–42–5)

Count 3: Keeping a Place for the Use or Sale of a Controlled Substance (SDCL 22–42–10)

Count 4: Conspiracy to Keep a Place for the Use or Sale of a Controlled Substance (SDCL 22–3–8 and 22–42–10)

Count 5: Delivery of a Noncontrolled Substance Represented to be a Controlled Substance (SDCL 22–42–16)

Count 6: Possession of a Firearm by One With Prior Violent Crime Conviction (SDCL 22–14–15)

Count 7: Unauthorized Possession of Substances with Intent to Make a Destructive Device (SDCL 22–14A–13)

Count 8: Attempted Manufacture of a Controlled Substance (SDCL 22–4–1(1) and 22–42–2)

The State also charged him as an habitual offender.

[¶ 6.] Hoeft filed a motion to suppress challenging the legal validity of the search warrant. The trial judge, who issued the search warrant, denied the motion to suppress. Hoeft did not make a motion to recuse the trial judge from presiding over the motion hearing.

[¶ 7.] Hoeft entered into a plea agreement with the State. He pled nolo contendere to Counts 1 and 7 and pled guilty to Counts 2, 5, and 6. He also pled guilty to the habitual offender charge. The State agreed to dismiss Counts 3, 4, and 8. A pending simple assault charge and potential insufficient funds check charges were also dismissed. A presentence investigation revealed that Hoeft pled guilty to first degree manslaughter in 1987 and served six years in the state penitentiary.

[¶ 8.] The trial court sentenced Hoeft to a total of forty years in the state penitentiary, with fifteen years on Count 1, ten years on Count 2, five years on Count 6, and ten years on Count 7 to be served consecutively. He was also sentenced to serve one year in the county jail after his penitentiary time.

[¶ 9.] Following his sentencing, the trial court granted Hoeft's request for new court-appointed counsel. His new counsel discovered the time for appeal had expired and requested permission to file a late appeal based on excusable neglect. The request was denied by the trial court. Hoeft filed a habeas corpus petition. Based on a stipulation by the State, the habeas court vacated the judgment and sentence and remanded for resentencing and reinstatement of the right to appeal. The trial judge filed an amended judgment

---

**2.** Later testing by the state crime lab determined that the substance was pseudoephedrine, a noncontrolled substance.

**3.** Hoeft was arrested prior to the execution of the search warrant.

shake it, and then it changes to a color. And there's a color scheme on the outside of the sample case. Match up your color of your test to the color on the case and it tells you what it is.

and sentence imposing the same sentence originally entered.

[¶ 10.] Hoeft appeals the four issues set forth in the introduction.

[¶ 11.] **1. WHETHER THE TRIAL JUDGE ERRED IN FAILING TO SUA SPONTE DISQUALIFY HIMSELF WHEN HE WAS REQUIRED TO RULE ON THE VALIDITY OF A SEARCH WARRANT WHICH HE ISSUED.**

[¶ 12.] Hoeft claims that the trial judge should have sua sponte disqualified himself from the case when he was required to rule on the validity of a search warrant which he issued. We do not reach the merits of this issue because we find that Hoeft waived this claim by failing to move to recuse the trial judge and by pleading guilty and nolo contendere to the charges. "This court has consistently followed the general rule that a voluntary and intelligent plea of guilty waives a defendant's right to appeal all nonjurisdictional defects in the prior proceedings." *State v. Cowley*, 408 N.W.2d 758, 759 (S.D. 1987) (citations omitted). "Any alleged error in denying a motion to suppress is a nonjurisdictional defect and is waived by a voluntary and intelligent guilty plea." *Id.* (citations omitted). A plea of nolo contendere has the same effect as a guilty plea in waiving nonjurisdictional defects. *Id.* (citations omitted).[4]

[¶ 13.] **2. WHETHER SDCL 22–14A–13 IS UNCONSTITUTIONALLY VAGUE.**

[¶ 14.] Hoeft claims that SDCL 22–14A–13 is unconstitutionally vague and

4. Other jurisdictions have determined that a judge who issues a search warrant is not per se disqualified from presiding over a suppression hearing:

    [T]he issue has been resolved directly and explicitly that a judge is not disqualified from later participation in a case, even where the suppression of physical evidence is the key issue, by virtue of the fact that he issued the search and seizure warrant. *Waupoose v. State*, 46 Wis.2d 257, 174 N.W.2d 503, 504 (1970); *Arnold v. Com-*

permits selective enforcement. SDCL 22–14A–13 provides:

Any person who possesses any substance, material, or any combination of substances or materials, with the intent to make a destructive device without first obtaining a permit from the department of public safety to make such device, is guilty of a Class 5 felony.

Specifically, he claims that the language "any substance, material, or any combination of substances or materials" is too vague in that it does not give a person of ordinary intelligence notice of what is prohibited. He claims that the vague language allows law enforcement "unfettered latitude in arresting anyone who has merely expressed a mental thought about making or utilizing a destructive device." We disagree.

[¶ 15.] A person challenging the constitutionality of a statute has a strong presumption to overcome:

There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175 (quoting *Sedlacek v. Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989) (citations omitted)).

[¶ 16.] It is well established that:

*monwealth*, 421 S.W.2d 366, 366–67 (Ky. 1967); *State ex rel. French v. Hendricks Superior Court*, 252 Ind. 213, 247 N.E.2d 519, 525 (1969); *State v. Smith*, 113 N.J.Super. 120, 273 A.2d 68, 78 (1971); *State v. Toce*, 6 Conn.Cir.Ct. 192, 269 A.2d 421, 422–23 (1969); *Irwin v. State*, 441 S.W.2d 203, 208–09 (Tex.Crim.App.1969).

*Trussell v. State*, 67 Md.App. 23, 506 A.2d 255, 256 (1986) (quoting *Peaper v. State*, 14 Md.App. 201, 286 A.2d 176, 180–81 (1972)).

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.

*State v. McGill,* 536 N.W.2d 89, 95 (S.D. 1995) (alteration in original) (quoting *State v. Dale,* 439 N.W.2d 98, 106 (S.D.1989)).

It is realized that criminal laws represent a legislative balancing act in many instances. In an attempt to prohibit certain conduct, the laws are usually written in a fashion to give broad application to the type of conduct sought to be forbidden. There is nothing inherently wrong with a broad application; for otherwise, there would exist a criminal law for each specific act. What is not allowed are laws so general in nature that people of ordinary intelligence may apply them differently.

*McGill,* 536 N.W.2d at 95 (quoting *Dale,* 439 N.W.2d at 106).

[¶ 17.] In *People v. Yoshimura,* 62 Cal.App.3d 410, 133 Cal.Rptr. 228, 231 (1976), the California Court of Appeals upheld the constitutionality of the statute after which SDCL 22–14A–13 is patterned. It stated:

[T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.... [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Id.* at 230–31 (citations omitted) (second alteration in original). The court further found that the statute only punishes the possession of a "substance" or "material" if the possession is with the specific intent to make a destructive device. "Innocent possession of a 'substance' or 'material' is not made punishable under the statute, nor is the mere intent to make a destructive device or explosive forbidden. Rather, possession is criminal conduct only where it is predicated and dependent upon the actor's specific intent to make that possession an integral step in the construction of an explosive or destructive device." *Id.* at 231. We agree.

[¶ 18.] Hoeft has not met his burden of showing beyond a reasonable doubt that SDCL 22–14A–13 is unconstitutionally vague. When the statute is read as a whole, any vagueness in the terms "substance" or "material" is eliminated by the specific intent requirement.

[¶ 19.] **3. WHETHER THE INDICTMENT FOR VIOLATION OF SDCL 22–14A–13 WAS SUFFICIENT TO GIVE HOEFT NOTICE OF THE CHARGES AGAINST HIM.**

[¶ 20.] Hoeft claims that the indictment for violation of SDCL 22–14A–13 was constitutionally defective and, therefore, his plea was invalid. He claims the indictment "failed to adequately apprise him with sufficient particularity of the crime which he was believed to have violated." This argument is without merit.

[¶ 21.] "To be sufficient, an information [or indictment] must state all of the elements of the offense charged, fairly inform the defendant of the charge against him, and enable the defendant to plead an acquittal of conviction in bar of future prosecutions for the same offense." *State v. Sprik,* 520 N.W.2d 595, 598 (S.D.1994) (citations omitted). An indictment is generally sufficient if it employs the language of the statute. *State v. Goodroad,* 521 N.W.2d 433, 435–36 (S.D.1994); *Sprik,* 520 N.W.2d at 598.

[¶ 22.] Count 7 of the indictment provides:

UNAUTHORIZED POSSESSION OF SUBSTANCES WITH INTENT TO MAKE DESTRUCTIVE DEVICE (SDCL 22–14A–13) in that he did possess a substance, material, or any combination of substances or materials, with the intent to make a destructive device without first obtaining a permit from the department of public safety to make such device, to-wit: Michael Hoeft did possess a flammable substance and/or shrapnell without obtaining a permit, in violation of SDCL 22–14A–13, (Cl. 5 felony)

[¶ 23.] The indictment employs the language of the statute and provides adequate notice of the charge. Therefore, we hold that the indictment was sufficient on its face.

[¶ 24.] **4. WHETHER HOEFT'S PLEAS WERE MADE KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY.**

 [¶ 25.] Hoeft claims that his pleas were not made knowingly, intelligently, and voluntarily because they were "based on an insufficient understanding of the nature of the charges, erroneous advice of counsel, and coercion." In effect he attempts to raise an ineffective assistance of counsel claim on direct appeal by claiming counsel failed to advise him of the possibility of recusing the trial judge from hearing the motion to suppress. He also claims counsel failed to attack the constitutionality of SDCL 22–14A–13 and the validity of the indictment. We have consistently held that claims of ineffective assistance of counsel generally will not be considered on direct appeal. *See McGill,* 536 N.W.2d at 94; *State v. Petersen,* 515 N.W.2d 687, 688 (S.D.1994); *State v. Sonen,* 492 N.W.2d 303, 304 (S.D.1992); *State v. Wurtz,* 436 N.W.2d 839, 842 (S.D.1989). A review of the record shows that the trial court advised Hoeft of his rights prior to accepting his plea and it appears that he knowingly, intelligently, and voluntarily waived those rights.

[¶ 26.] Therefore, we affirm.

[¶ 27.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

